FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 13 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RACETRAC PETROLEUM, INC., )
a Georgia corporation, )
                              )
         Plaintiff, )
                              )
     v. )     Civil Action No. **1**:10-CV-2162
                              )
ACE AMERICAN INSURANCE )
COMPANY, a Pennsylvania )
corporation, )          WSD
                              )
         Defendant. )

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff RACETRAC PETROLEUM, INC. hereby files this Complaint

against the Defendant ACE AMERICAN INSURANCE COMPANY, alleging as

follows:

## PARTIES

### 1.

Plaintiff RaceTrac Petroleum, Inc. ("RaceTrac") is a Georgia corporation

with its principal place of business in Atlanta, Georgia. RaceTrac is affiliated with

more than 500 retail gasoline convenience stores in the southeastern United States,

more than half of which it operates itself under the RaceTrac® name, and the

remainder of which it leases to third parties who independently operate those additional stations under the RaceWay® name.

2.

Defendant ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. ACE is a provider of property, casualty, risk-management, and accident and health insurance products to corporate clients.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because: (a) there is complete diversity of citizenship between RaceTrac and ACE inasmuch as RaceTrac is a citizen of the State of Georgia (place of incorporation and principal place of business) and ACE is a citizen of the State of Pennsylvania (place of incorporation and principal place of business); and (b) the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

5.

Defendant ACE is subject to the jurisdiction of this Court and may be served with a copy of the summons and complaint through its registered agent, Mark G. Irwin at 500 Colonial Center Parkway, #200, Roswell, Georgia 30076.

## FACTUAL BACKGROUND

### Nature of the Action

6.

This is an action for declaratory judgment brought pursuant to the terms of Excess Commercial General Liability Policies Nos. XSL-G20593854, policy period 06/01/05 to 06/01/06 (the "'05-'06 Policy") (a true and correct copy of this Policy is attached hereto as Exhibit "A") and XSL-G21732850, policy period 06/01/06 to 06/01/07 (the "'06-'07 Policy") (a true and correct copy of this Policy is attached hereto as Exhibit "B") (collectively, the "Policies").[1] Specifically, RaceTrac seeks a declaration regarding the coverage provided by these Policies.

7.

The '05-'06 Policy was delivered to RaceTrac in the State of Georgia.

8.

The '06-'07 Policy was delivered to RaceTrac in the State of Georgia.

---

[1] The confidential pricing information in Exs. "A" and "B" has been redacted.

9.

Georgia law applies to the Policies.

**Key Provisions of the Policies**

10.

Section I(A)(1)(a) of the Policies obligates ACE to "pay the insured for the 'ultimate net loss' in excess of the 'retained limit' shown in the Declarations that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See* Exs. "A" and "B."

11.

"Ultimate net loss" is defined in Section V(19) of the '05-'06 Policy and V(20) of the '06-'07 Policy, through Endorsement No. Eight (8), as "the total amount which the insured is legally obligated to pay as damages due to an 'occurrence' or offense arising out of covered claims or 'suits'. . . ." *See* Exs. "A" and "B."

12.

"Suit" is defined in Section V(18) of the Policies as "a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury', or

'advertising injury' to which this insurance applies are alleged." *See* Exs. "A" and "B."

13.

The "retained limit" is defined on Page two (2) of the Policies' Declarations as $500,000. *See* Exs. "A" and "B."

14.

Section I(A)(1)(b) of the Policies states that the insurance coverage applies to bodily injury if: "(1) The 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory'; (2) The 'bodily injury' . . . occurs during the policy period; and (3) the claim alleged is not one, the "occurrence" of which any "listed insured" or any "authorized employee" of a "listed insured" had knowledge of prior to the policy period. *See* Exs. "A" and "B."

15.

Section I(A)(1)(e) of the Policies states that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" *See* Exs. "A" and "B."

16.

Section V(3) of the Policies defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* Exs. "A" and "B."

17.

Section V(12) of the Policies defines "occurrence" as "an accident, including continuous or repeated **exposure** to substantially the same general harmful conditions." *See* Exs. "A" and "B" (emphasis added).

18.

Section V(4) of the Policies defines "coverage territory" to include, *inter alia*, "the United States of America . . . ." *See* Exs. "A" and "B."

19.

The '05-'06 Policy defines the "Policy Period" as 06/01/2005 to 06/01/2006. The '06-'07 Policy defines the "Policy Period" as 06/01/2006 to 06/01/2007. *See* Exs. "A" and "B."

20.

Section I(A)(1)(a) of the Policies provides that "[n]o other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under DEFENSE, INVESTIGATION, SETTLEMENT, LEGAL

EXPENSES, AND INTERESTS ON JUDGMENTS." *See* Exs. "A" and "B."

21.

The Section of the Policies entitled DEFENSE, INVESTIGATION,

SETTLMENT, LEGAL EXPENSES, AND INTERESTS ON JUDGMENTS, as

amended by Endorsement No. Eight (8), provides that the Policies "do[] not apply

to defense, investigation, settlement, or legal expenses, other than 'loss adjustment

expense' . . . ." *See* Exs. "A" and "B."

22.

"Loss adjustment expense," in turn, is defined in Section V(22) of the '05-

'06 Policy and V(23) of the '06-'07 Policy, through Endorsement No. Eight (8), to

mean "such claim expenses and costs incurred by the insured or by us in

connection with the investigation, administration, adjustment, settlement or

defense of any claim or 'suit' to which this policy applies." *See* Exs. "A" and "B."

23.

Section V(16) of the '05-'06 Policy and V(17) of the '06-'07 Policy provide,

through Endorsement No. Eight (8), that "'loss adjustment expense' shall be

included within the 'retained limit.'" *See* Exs. "A" and "B."

## The Bunns and Williams Litigation Claims

24.

On or about August 14, 2008, Jacqueline Sheree Bunns ("Ms. Bunns") filed a personal injury complaint against RaceTrac and other parties in the United States District Court for the Eastern District of Mississippi (the "Bunns Federal Complaint"). A true and correct copy of the Bunns Federal Complaint is attached hereto as Exhibit "C."

25.

On or about June 06, 2009, the Bunns Federal Complaint was dismissed without prejudice for lack of diversity jurisdiction.

26.

On or about April 13, 2009, Ms. Bunns re-filed her personal injury complaint in the Circuit Court of Tishomingo County, Mississippi, Cause No. 09-0057PT (the "Bunns State Complaint"). A true and correct copy of the Bunns State Complaint is attached hereto as Exhibit "D."

27.

The Bunns State Complaint alleges (as does the Bunns Federal Complaint) that Ms. Bunns was exposed to Benzene during her employment at a RaceWay® service station in Burnsville, Mississippi that was leased from RaceTrac and

independently operated by Pam Ryan (the "Ryan RaceWay"). *See* Exs. "C" and "D." The Bunns State Complaint also adds two plaintiffs – Dakota Bunns and Harley Bunns – and alleges that they were also exposed to Benzene during Ms. Bunns' employ at the Ryan RaceWay. *See* Ex. "D." In short, the Bunns State Complaint alleges that the plaintiffs' exposure to toxic fumes was caused by the collective defendants' negligence, and that as a result of such negligence, the plaintiffs have suffered ongoing personal injuries. *See* Ex. "D."

28.

The Bunns State Complaint asks for fifteen million dollars ($15,000,000) in damages and twenty-five million ($25,000,000) in punitive damages, costs and attorney's fees for Ms. Bunns' alleged injuries, and $5,000,000 in damages for each of Harley and Dakota Bunns' alleged injuries, respectively. *See* Ex. "D."

29.

On or about April 14, 2009, Lisa R. Williams ("Ms. Williams") filed a personal injury complaint against RaceTrac and other parties in the Circuit Court of Tishomingo County, Mississippi, Cause No. 09-0059PT (the "Williams Complaint"). A true and correct copy of the Williams Complaint is attached hereto as Exhibit "E."

30.

The Williams Complaint alleges, in language nearly identical to the Bunns Complaints, that Ms. Williams was exposed to Benzene during her employment at the Ryan RaceWay. *See* Ex. "E." As do the Bunns Complaints, the Williams Complaint alleges that Ms. Williams' exposure to toxic fumes was caused by the collective defendants' negligence, and that as a result of such negligence, Ms. Williams has suffered ongoing personal injuries. *See* Ex. "E."

31.

The Williams Complaint asks for fifteen million dollars ($15,000,000) in damages and twenty-five million ($25,000,000) in punitive damages, as well as all costs and attorney's fees. *See* Ex. "E."

32.

Mses. Bunns and Williams have both alleged during discovery in their respective cases that their exposure to hazardous conditions and fumes began sometime "[a]fter renovation work was completed [on the Ryan RaceWay] . . . in April 2006."

33.

Ms. Bunns has alleged in discovery in her case that she was employed at the Ryan RaceWay from 2005 to February 2007.  Ms. Williams has alleged in discovery in her case that she was employed at the Ryan RaceWay station in 2006.

34.

Accordingly, discovery in the Bunns and Williams matters has established that the plaintiffs in those actions are claiming that they suffered personal injuries as a result of being exposed to hazardous chemicals during the Coverage Period.

## The Policies Provide Coverage for the Bunns and Williams Litigation Matters

35.

The Policies provide coverage to RaceTrac for the Bunns and Williams matters and the claims asserted therein because RaceTrac may become obligated to pay an "ultimate net loss" and "loss adjustment expenses" in excess of the $500,000 "retained limit" due to a suit alleging "bodily injury" that was the result of an "occurrence" that took place within the "coverage territory" during the "policy period" (the "Covered Losses").

## The Denial of Coverage under the "Pollution Exclusion"

36.

In defending against the Bunns and Williams litigation matters, RaceTrac has already incurred reasonable and necessary legal fees and other costs, and may eventually incur Covered Losses.

37.

As such, as soon as practicable after receiving information regarding the Bunns and Williams litigation matters, RaceTrac – through its then third-party claims administrator Gallagher Basset Services, Inc. – provided detailed written notice of the Bunns and Williams matters to ACE and demanded coverage for same under the Policies.

38.

RaceTrac itself also provided timely and detailed written notice of the Bunns and Williams litigation matters to ACE. For example, on or about October 06, 2008, RaceTrac forwarded the Bunns Federal Complaint, Summons, Case Assignment, Answer, Corporate Disclosure Statement, and a number of other documents relevant to the Bunns litigation matter to ACE. Additionally, on or about February 26, 2010, RaceTrac – through its outside counsel Steve A. Tucker

– provided ACE with a copy of the Complaint and Answer in the Williams litigation matter.

39.

Since RaceTrac first provided ACE with notice of the Bunns and Williams litigation matters, RaceTrac has, through its outside litigation counsel, consistently provided ACE with numerous detailed litigation reports.

40.

Despite timely written notice of the Bunns and Williams litigation matters and RaceTrac's demands for coverage under the Policies, ACE has failed and refused to accept coverage for these claims.  Specifically, on or about March 11, 2010, **almost two years** after ACE was first put on notice of the Bunns matter, ACE sent a letter to RaceTrac stating that "[b]ased on the available information to date, no coverage exists for the above-referenced lawsuit under the policies.  Here the plaintiff seeks damages for bodily injury as a result of exposure to benzene due to exposure over a number of years [sic].  Accordingly, no coverage exists for these matters, as exclusion f; the POLLUTION [sic] applies to preclude coverage for this claim."  A true and correct copy of this coverage denial letter is attached hereto as Exhibit "F."

41.

ACE has ignored RaceTrac's demands for coverage for the claims asserted in the Williams matter. It is clear, however, that ACE does not intend to provide coverage for the Williams litigation matter, as the allegations in that matter are almost identical to those in the Bunns matter, and coverage on the Williams matter would be supplied by the same Policies.

42.

Section I(A)(2)(f) of the '05-'06 Policy, through Endorsement No. Nine (9), provides that "[t]his insurance does not apply to . . . [a]ny injury, damage, expense, cost, liability or legal obligation arising out of or in any way related to pollution, however caused. Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water." *See* Ex. "A." Section I(A)(2)(f) of the '06-'07 Policy contains identical language through Endorsement No. Ten (10). *See* Ex. "B."

## The Pollution Exclusion Does Not Preclude Coverage
## for the Bunns and Williams Litiation Matters

43.

Benzene is an aromatic hydrocarbon that is a natural constituent of crude oil, as well as an additive used to make unleaded gasoline. As a result of its use in the refining process, unleaded gasoline typically contains a small amount of benzene at the point it is pumped into consumer vehicles at service stations.

44.

In line with the general practice within the service station industry, RaceTrac purchases its gasoline from refineries that make unleaded gasoline by combining a number of compounds, one of which is benzene. A third party carrier then ships the final product to RaceTrac® and RaceWay® service stations, where it is pumped into underground holding tanks and then ultimately pumped into automobiles by end-consumers.

45.

Mses. Bunns and Williams have both alleged, at various times, that their alleged injuries were caused by exposure to the benzene contained in the ordinary unleaded gasoline sold at the Ryan RaceWay during the Coverage Period.

46.

For example, in a recorded statement provided by Ms. Bunns in December 2006, she stated that she was "exposed to gas" and that she had suffered damages to her lungs from "[v]apors off the gas" where "the benzene is from." She also stated in that same interview that "when they found out it was the vapors and that the lines were completely open coming into the store, so there was vapors and fumes off the gas coming into the store." Moreover, Ms. Bunns told her doctors that she was sick from "gas poisoning." In addition, Mses. Bunns and Williams have both alleged in discovery in their respective cases that they allegedly began experiencing symptoms "[a]fter the first load of gas was placed into the tanks, after the renovation . . . ." ACE has been made aware of these statements, admissions and allegations on multiple occasions via the detailed litigation reports provided to ACE by RaceTrac's outside litigation counsel.

47.

Under Georgia law, an exclusion in an insurance policy will not be enforced if it violates public policy.

48.

Georgia public policy disfavors insurance policy provisions that permit the insurer, at the expense of the insured, to avoid the risk for which the insurer has

been paid and for which the insured reasonably expects it is covered – especially where the plaintiffs allege their damages to have been caused by the fault of a party other than the insured.

49.

Section V(21) of the Policies defines "your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou." *See* Exs. "A" and "B." The primary product sold, handled and distributed by RaceTrac is unleaded gasoline, which contains a small amount of benzene.

50.

ACE set the premium paid by RaceTrac for the coverage provided under the Policies **by the gallon of gasoline sold** by RaceTrac. *See* Exs. "A" and "B."

51.

As such, upon information and belief, ACE's underwriters, in drafting the Policies and their pricing provisions, took into account the risk of having to defend and indemnify RaceTrac against bodily injury claims arising out of RaceTrac's sale of gasoline or its constituent compounds.

52.

Also, as a result of the "by-the-gallon" pricing provisions, the Policies were purchased with the understanding that they would cover RaceTrac for bodily injury arising out of exposure to gasoline and its constituent compounds, including benzene. RaceTrac reasonably expected such claims to be covered when it purchased the Policies.

53.

The Bunns and Williams Complaints allege that the actual cause of the plaintiffs' damages was at least partially the fault of a party other than RaceTrac. Specifically, those Complaints allege that "the Defendants, Detsco and Cobb, performed renovations on the station and allowed the lines to be routed into a console in or about the cash registered [sic] which caused fumes to be inhaled by the Plaintiff on a daily basis. That because of the improper installation and the failure of the Defendants, Detsco and Cobb, to place a vapor recovery system [sic] the Plaintiff was overly exposed to fumes." *See* Ex. C ¶4; Ex. D ¶4; Ex. E ¶4.

54.

In light of the foregoing, it would violate the public policy of Georgia to allow ACE to sell a liability policy to RaceTrac that contains an exclusion for damages resulting from gasoline or one of its constituent compounds.

55.

The Pollution Exclusion is therefore void and unenforceable under Georgia law, at least to the extent it purports to exclude coverage for injuries resulting from exposure to fumes from gasoline or one of its constituent compounds.

## COUNT 1:
## DECLARATORY RELIEF

56.

RaceTrac hereby re-alleges paragraphs 1 through 55 above as if fully set forth herein.

57.

The express terms of the Policies obligate ACE to defend and indemnify RaceTrac for the Covered Losses it may incur as a result of the Bunns and Williams litigation matters.

58.

All conditions precedent to coverage and recovery under the Policies have been satisfied, waived or are inapplicable.

59.

ACE has failed and refused to recognize its obligation (and has in fact expressly stated that it is not obligated) to provide coverage to RaceTrac for any

portion of the Covered Losses that RaceTrac may incur as a result of the Bunns and Williams litigation matters.

60.

As a result of the foregoing, there now exists an actual, justiciable controversy between RaceTrac and ACE within the meaning of 28 U.S.C. § 2201 with respect to ACE's obligation to provide coverage to RaceTrac for any Covered Losses as a result of the claims raised in the Bunns and Williams litigation matters. Accordingly, this Court is vested with the power to declare and adjudicate the rights, obligations and other legal relationships of RaceTrac and ACE with respect to the issues raised by this Complaint.

61.

RaceTrac is uncertain and insecure in regard to its rights, status, and other legal relations relating to Policies.

62.

By reason of the foregoing, RaceTrac is entitled to a declaratory judgment under 28 U.S.C. § 2201, declaring that ACE must provide coverage to RaceTrac for any portion of the Covered Losses that RaceTrac may incur as a result of the Bunns and Williams litigation matters.

63.

By reason of the foregoing, RaceTrac is entitled to a declaratory judgment

under 28 U.S.C. § 2201, that the Pollution Exclusion set forth in the Policies is

unenforceable as against the public policy of the State of Georgia, at least to the

extent it purports to exclude coverage for injuries resulting from exposure to fumes

from gasoline or one of its constituent compounds.

## COUNT TWO:
## ATTORNEYS' FEES

64.

RaceTrac hereby re-alleges paragraphs 1 through 63 above as if fully set

forth herein.

65.

In all the actions set forth above, ACE has acted in bad faith, been

stubbornly litigious, and has caused RaceTrac unnecessary trouble and expense.

66.

Pursuant to O.C.G.A. § 13-6-11, RaceTrac is therefore entitled to recover all

its costs in pursuing this action including, but not limited to, reasonable attorneys'

fees.

WHEREFORE, RaceTrac prays that the Court:

(a)    enter judgment in favor of RaceTrac;

(b)     enter a declaratory judgment, under 28 U.S.C. § 2201, declaring that

ACE must provide coverage to RaceTrac for any portion of the

Covered Losses that RaceTrac may incur as a result of the Bunns and

Williams litigation matters;

(c)     enter a declaratory judgment, under 28 U.S.C. § 2201, that the

Pollution Exclusion set forth in the Policies is unenforceable as

against the public policy of the State of Georgia, at least to the extent

it purports to exclude coverage for injuries resulting from exposure to

fumes from gasoline or one of its constituent compounds;

(d)     award RaceTrac all costs in pursuing this action including, but not

limited to, attorneys' fees; and

(e)     grant such other and further relief to RaceTrac as it deems just and

equitable.

## <u>JURY TRIAL DEMAND</u>

Plaintiff RaceTrac demands a trial by jury on all issues so triable.

Respectfully submitted, this 13 th day of July, 2010.

Michael S. French
Ga. Bar No. 276680

WARGO & FRENCH LLP
1170 Peachtree Street, NE
Suite 2020
Atlanta, GA  30309
(404) 853-1500

Attorneys for Plaintiff
RaceTrac Petroleum, Inc.