**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RACETRAC PETROLEUM, INC.,** a Georgia Corporation, **Plaintiff,** v. **ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,** **Defendant.** | **1:10-cv-2162-WSD** |

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant ACE American Insurance

Company's ("Ace") Motion to Dismiss [11].

## I.     BACKGROUND

Plaintiff RaceTrac Petroleum, Inc. ("RaceTrac") is a Georgia corporation

that operates itself, or leases to third-parties, more than 500 retail locations in the

southeastern United States, to sell gasoline, food, and other convenience items.

(Compl. ¶ 1).  Ace is a Pennsylvania corporation that provides commercial general

liability insurance products to corporate clients.  (<u>Id.</u> ¶ 2).

RaceTrac seeks a declaratory judgment that a commercial general liability

insurance policy it purchased from Ace provides coverage for two lawsuits filed

against RaceTrac by two employees who allege personal injuries resulting from benzene poisoning caused by overexposure to gasoline vapor at work.

A.    The Policy

This action involves an "Excess Commercial General Liability Policy" that RaceTrac purchased from Ace, originally covering the period June 1, 2005, to June 1, 2006, and renewed to cover the period June 1, 2006, to June 1, 2007 (collectively, the "Policy").  (Id. ¶ 6 & Exs. A-B (the "Original Policy" & "Renewal Policy")).[1]  Under the Policy, Ace agrees to "pay the insured for the 'ultimate net loss' in excess of the 'retained limit' shown in the Declarations that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (Original Policy § I.A.1.a).

The Policy restricts coverage for certain types of injuries, including injuries arising from pollution (the "Pollution Exclusion").  A subsection in the body of the Policy disclaims coverage for injuries or liabilities arising out of or related to pollution.  (Original Policy §§ I.A.2.f , V.14).  Endorsement 9 replaces that exclusion with an identical exclusion, but allowing coverage for damages arising

---

[1]  The portions of the Original Policy and Renewal Policy that are relevant to this Order have identical wording.

from pollution released by the heat, smoke, or fumes of a hostile fire.

Endorsement 9 provides:

> [This insurance does not apply to:] Any injury, damage, expense, cost, loss, liability or legal obligation arising out of or in any way related to pollution, however caused.

> Pollution includes the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous.  Environment includes any air, land, structure or the air therein, watercourse or water, including underground water.

> This exclusion does not apply to: "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire . . . .

> A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(Original Policy, endorsement 9).

B.    The Underlying Lawsuits

On April 13, 2009, Jacqueline Sheree Bunns ("Bunns") filed a personal injury lawsuit against RaceTrac and others in the Circuit Court of Tishomingo County, Mississippi.  (Compl. Ex. D (Complaint, Bunns v. Detsco, Inc., No. 09-0057 (Miss. Cir. Ct. Tishomingo Cnty.)) (the "Bunns Complaint")).  On April 14, 2009, Lisa R. Williams ("Williams"), represented by the same attorney as Bunns, filed in the same court as Bunn's action, a nearly identical personal injury lawsuit

against RaceTrac and others (collectively, the "Underlying Lawsuits").  (Compl.
Ex. E (Complaint, Williams v. Detsco, Inc., No. 09-0059 (Miss. Cir. Ct.
Tishomongo Cnty.)) (the "Williams Complaint")).

The Underlying Lawsuits allege that Bunns and Williams (the "Underlying
Plaintiffs") worked at a gas station that RaceTrac had leased to a third-party to
operate.  (Bunns Compl. at 3; Williams Compl. at 2).  They allege that other
defendants in the Underlying Lawsuits performed renovations on the gas station,
after which the Underlying Plaintiffs noticed "an extremely unusual odor" inside
the premises.  (Bunns Compl. at 3; Williams Compl. at 2).  The odor lasted
"several weeks and months."

The Underlying Plaintiffs began experiencing unusual health problems.
Their conditions worsened with the Underlying Plaintiffs experiencing "nose
bleeds, dizziness, severe headaches, chest pains, breathing problems, fatigue,
abdominal pain, bleeding from [their] ears, and loss of finger nails and toe nails."
(Bunns Compl. at 3; Williams Compl. at 2-3).  They eventually experienced hair
loss, changed voices, and chemical sensitivity.  (Bunns Compl. at 3; Williams
Compl. at 3).  As a result of these health problems, Bunns and Williams allege they
have been unable to work and that they have incurred substantial medical
expenses.  (Bunns Compl. at 4; Williams Compl. at 3-4).

Medical tests allegedly revealed that Bunns and Williams were exposed to high levels of benzene, which they describe as "a highly toxic, flammable liquid that is not commonly dispensed in service stations and [which] presents a serious health hazard when exposed to humans in large quantities." (Bunns Compl. at 3; Williams Compl. at 3). The Underlying Plaintiffs allege that negligent renovations of the RaceTrac location where they worked caused "lines to be routed into a console in or about the cash register[] which caused fumes to be inhaled by the Plaintiff[s] on a daily basis." (Bunns Compl. at 4; Williams Compl. at 3). Bunns and Williams also allege the possibility that RaceTrac delivered benzene to the gas station instead of gasoline, exposing Bunns and Williams to excessive levels of benzene. (Bunns Compl. at 4; Williams Compl. at 3). Bunns seeks fifty million in damages, and Williams seeks forty million. (Bunns Compl. at 5; Williams Compl. at 4).

Benzene is typically present in small amounts in unleaded gasoline, including the gasoline that is delivered and sold at gas stations. (Compl. ¶ 43). Although the Underlying Plaintiffs allege that benzene was delivered to the gas station in place of gasoline, RaceTrac alleges that discovery in the Underlying Lawsuits has revealed that the Underlying Plaintiffs' claims are in fact based on exposure to gasoline fumes from ordinary unleaded gasoline. (Compl. ¶¶ 45-46).

C.      The Current Dispute

Bunns and Williams commenced the Underlying Lawsuits in April 2009.

RaceTrac provided Ace with details of the Underlying Lawsuits soon thereafter,

and updated Ace as the litigation progressed.  (Compl. ¶ 37).  The Policy was in

effect during the time the Underlying Plaintiffs sustained their injuries.  (Compl. ¶

33).

On March 11, 2010, Ace disclaimed any coverage under the Policy for

liability related to the Underlying Lawsuits.  Ace claimed that benzene is a

pollutant and that the Underlying Plaintiffs' alleged injuries "arise out of" or are

"related to" the presence of benzene in the air. (Compl. ¶ 40).  Based on the

Pollution Exclusion, Ace concluded that no coverage exists for the Underlying

Lawsuits.

On July 13, 2010, RaceTrac filed its Complaint in this Court.  RaceTrac

seeks a declaratory judgment that the Policy covers any excess liability RaceTrac

incurs as a result of the Underlying Lawsuits, that the Pollution Exclusion is

ambiguous and does not preclude coverage for the injuries alleged in the

Underlying Lawsuits, and that the Pollution Exclusion is unenforceable in this case

because it violates Georgia public policy.  (Compl. ¶¶ 62-63).  Ace moves to

dismiss the Complaint, asserting that as a matter of law the Pollution Exclusion

excludes liability related to the Underlying Lawsuits from coverage under the Policy, and that as a matter of law the Pollution Exclusion is enforceable and does not violate Georgia public policy.  Ace argues that because the Policy does not provide coverage for the Underlying Lawsuits as a matter of law, RaceTrac has failed to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

## II.    DISCUSSION

### A.    Legal Standard On A Motion To Dismiss

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."  Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).  Reasonable inferences are made in Plaintiff's favor, but "unwarranted deductions of fact in a complaint are not admitted as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotation marks omitted).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 1951 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  Mere "labels and conclusions" are insufficient.  Twombly, 550 U.S. at

555.  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

This requires more than the "mere possibility the defendant acted unlawfully."

Sinaltrainal, 578 F.3d at 1261.   "The well-pled allegations must nudge the claim

'across the line from conceivable to plausible.'"  Id. (quoting Twombly, 550 U.S.

at 570).

     B.     The Interpretation Of The Pollution Exclusion

          1.     *Georgia Principles Of Insurance Contract Interpretation*

The parties do not dispute that Georgia substantive law governs the

interpretation of the Policy.  See, e.g., Boardman Petroleum, Inc. v. Fed. Mut. Ins.

Co., 135 F.3d 750, 752 (11th Cir. 1998); Bituminous Cas. Corp. v. Advanced

Adhesive Tech., Inc., 73 F.3d 335, 337 (11th Cir. 1996).

In Georgia, "the interpretation of an insurance policy, including the

determination and resolution of ambiguities, is a question of law for the court to

decide."  Giddens v. Equitable Life Assurance Soc'y of the U.S., 445 F.3d 1286,

1297 (11th Cir. 2006) (applying Georgia law); see also Ga. Code Ann. § 13-2-1

("The construction of a contract is a question of law for the court.").  Courts

interpret the unambiguous terms of an insurance policy using their plain meaning. See Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc., 505 S.E.2d 729, 730 (Ga. 1998).  "The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others."  Lavoi Corp. v. Nat'l Fire Ins. of Hartford, 666 S.E.2d 387, 391 (Ga. Ct. App. 2009).

When a policy term is ambiguous, the conditions and provisions are "strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance."  Id. (quoting Davis v. United Am. Life Ins. Co., 111 S.E.2d 488, 492 (Ga. 1959).  "[T]he rights of the parties to an insurance policy," however, "should not be expanded beyond the terms of the policy."  Id. "The unambiguous provisions of the policy are enforced, without the court pondering whether the provisions are 'fair' or 'good policy.'"  Thornton v. Ga. Farm Bureau Mut. Ins. Co., 695 S.E.2d 642, 647 (Ga. 2010).

## 2.   *Application To The Pollution Exclusion*

The Policy excludes coverage for any "injury, damage, expense, costs, liability or legal obligation arising out of or in any way related to" "the actual, alleged or potential presence in or introduction into" "any air, land, structure or the air therein, watercourse or water, including underground water," "of any substance if such substance has, or is alleged to have, the effect of making the environment

9

impure, harmful, or dangerous."  (Original Policy, endorsement 9).  RaceTrac argues the exclusion is ambiguous, and must be construed in favor of coverage for RaceTrac, for three reasons: First, it is ambiguous whether gasoline fumes are a pollutant under the Policy; second, it is ambiguous whether the injuries alleged in the Underlying Lawsuits "arose out of" or are "related to" pollution; and, third, it is ambiguous whether the Pollution Exclusion applies to on-site pollution—what RaceTrac refers to as "non-environmental pollution"—rather than only to cases of mass environmental contamination.

a.  <u>Whether The Pollution Exclusion Applies To "Non-Environmental"
    Pollution</u>

The Court first addresses RaceTrac's last argument in favor of ambiguity, because the Georgia Supreme Court has resolved this issue.  RaceTrac notes that pollution exclusions "were developed by commercial insurers in response to numerous environmental regulations, such as CERCLA, which collectively exposes liability insurers to potentially billions of dollars in previously-unforeseen liability related to environment cleanup."  (Pl.'s Br. Opp'n Mot. Dismiss at 19).  Under this theory, application of the Pollution Exclusion to "run-of-the-mill tort claims" is ambiguous because, "in light of the history of the regulatory backdrop which prompted the development of the pollution exclusion, reasonable insureds would conclude that such clauses only act to preclude coverage in cases involving

mass environmental contamination." (Id. at 19). RaceTrac submits that Ace arguably did not have the purpose of excluding coverage for injuries like those alleged in the Underlying Lawsuits, thus the Pollution Exclusion does not apply.

There is a deep split among jurisdictions over whether pollution exclusions apply to all injuries caused by pollutants, or, do they exclude injuries caused by exposure to pollutants occurring near the pollutant's intended use. See generally Fireman's Ins. Co. of D.C., v. Kline & Son Cement Repair, 474 F. Supp. 2d 779, 793-94 & nn.5-6 (E.D. Va. 2007) (discussing split and collecting cases). The Georgia Supreme Court decisively resolved this coverage dispute in Georgia in Reed v. Auto-Owners Insurance Co., 667 S.E.2d 90, 92 (Ga. 2008).

In Reed, a residential tenant sued her landlord for carbon monoxide poisoning allegedly caused by the landlord's failure to maintain the rental house in good repair. 667 S.E.2d at 91. The landlord had a commercial general liability policy with a pollution exclusion similar to the one at issue in this case. Id. The insurer refused coverage on the grounds that the tenant's injuries were caused by pollution and thus subject to the pollution exclusion. Id. The Georgia Court of Appeals upheld the exclusion, finding that the pollution exclusion applied to carbon monoxide poisoning. The Georgia Supreme Court granted certiorari. Id.

11

The Reed court considered whether the pollution exclusion in that case was ambiguous and if "one reasonable reading of the clause is that it applies only to what is traditionally considered to be 'environmental' pollution." Id.  The court noted that the dissenting opinion in the court of appeals had found ambiguity "by first identifying 'the purpose' of pollution exclusion clauses generally and then surveying the 'historical evolution of the text of the standard exclusion' before turning to the plain language of the pollution exclusion clause." Id. at 92 (quoting Auto-Owners Ins. Co. v. Reed, 649 S.E.2d 843, 846 (Ga. Ct. App. 2007) (Ellington, J., dissenting)).  The Reed court rejected that approach, because the "focus on extra-textual sources of interpretation led [the dissenting judges] to find ambiguity in the pollution exclusion clause where there is none." Id.

While some jurisdictions have relied on the context and evolution of pollution exclusions to find that the application of pollution exclusions to liability arising from on-site pollution is ambiguous, the Georgia Supreme Court has foreclosed that interpretation.  As a matter of law, the Pollution Exclusion is not ambiguous in its application to injuries arising from exposure to pollutants on the insured's premises.[2]

---

[2] The Court also notes that the Pollution Exclusion specifically applies to pollutants present in any "structure *or the air therein*," (Original Policy, endorsement 9), which further clarifies that the Pollution Exclusion applies to the presence of

b.  Whether Gasoline Or Benzene Is A Pollutant Under The Policy

RaceTrac next argues that the definition of pollutant in the Policy is ambiguous, that whether gasoline fits the Policy's definition of pollutant is ambiguous, and that the Policy must therefore be construed in favor of coverage. In support RaceTrac relies primarily on Barrett v. National Union Fire Insurance Co. of Pittsburgh, 696 S.E.2d 326, 330 (Ga. Ct. App. 2010), which held that it was ambiguous whether natural gas was a pollutant under a pollution exclusion that defined pollutant as an "irritant or contaminant."

In that case, Barrett, an employee of the insured, was assisting two other employees in the installation of a natural gas pipeline.  696 S.E.2d at 328.  The other two employees had received training on how to safely work near natural gas lines, but Barrett had not.  Id.  Due to difficulty with the installation, Barrett at one point lowered himself down into the excavation ditch where the gas line was located and worked there for approximately two hours, taking only two or three short breaks during that time.  Id.  While in the ditch with the gas line, Barrett was covered by a rain poncho to prevent glare from the sun from interfering with his work.  Id.  Over the course of two hours, "natural gas accumulated under the rain

pollutants in the air inside RaceTrac's retail premises, as alleged in the Underlying Lawsuits.

poncho, creating an oxygen-deficient atmosphere," which caused Barrett to suffer "a permanent and disabling brain injury."  Id.

Barrett and his wife were awarded a judgment from Barrett's employer and they sought to recover the judgment against the employer's insurer.  The insurer argued that Barrett's injuries fell within the policy's pollution exclusion because the injuries were caused by natural gas, and natural gas met the definition of pollutant under the policy.  Id. at 329.  The exclusion defined "pollutants" as "any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  Id.  The question before the Barrett court was whether natural gas is an "irritant or contaminant."  Id.

The court in that case noted that "the Barretts have not alleged that Barrett was 'poisoned' by natural gas or that he was harmed merely by the release of natural gas from the tap."  Id. at 330.  Instead, the Barretts alleged that "the natural gas released from the tap was allowed to accumulate, thereby creating an oxygen-deprived atmosphere, and that it was the lack of oxygen that injured Barrett."  Id. The Barrett court distinguished Reed, in which the Georgia Supreme Court held that carbon monoxide was an irritant or contaminant, because the plaintiff in Reed alleged that she had been "poisoned."  Id.

14

The <u>Reed</u> court found it unnecessary to "consult a plethora of dictionaries and statutes to conclude that carbon monoxide is an irritant or contaminant.  After all, the very basis for the [plaintiff's] lawsuit is her claim that the release of carbon monoxide gas inside the rental house 'poisoned' her . . . ."  <u>Barrett</u>, 696 S.E.2d at 330 (quoting <u>Reed</u>, 667 S.E.2d at 92).  In <u>Barrett</u>, by contrast, "the allegations of the complaint indicate that exposure to natural gas is not necessarily dangerous and does not automatically result in injury so long as the supply of oxygen is not impeded."  <u>Id.</u>  The <u>Barrett</u> court therefore refused to hold that natural gas was an "irritant or contaminant" for the purposes of the policy exclusion.  <u>Id.</u>

The reasoning of <u>Barrett</u> does not apply to the allegations of the Underlying Lawsuits in this case.  To the contrary, the discussions in <u>Barrett</u> and <u>Reed</u> convince the Court that, as a matter of Georgia law, the substance that allegedly caused the Underlying Plaintiffs' injuries unambiguously meets the definition of "pollution" in the Pollution Exclusion.  <u>Barrett</u> relied on the fact that natural gas was not considered harmful or dangerous, and that Barrett was not "poisoned" by natural gas.  In this case, the Underlying Plaintiffs alleged they were "exposed to high levels of 'Benzene,'" which they allege is "highly toxic."  (Bunns Compl. at 3; Williams Compl. at 3).  That is, they allege it was benzene in gasoline that was the proximate cause of the injuries they allege.  The Pollution Exclusion applies to

"any substance if such substance has, *or is alleged to have*, the effect of making the [air] *impure, harmful, or dangerous*, including air in a structure. (Original Policy, endorsement 9 (emphasis added)). In this case, the Underlying Plaintiffs allege that the gasoline vapor, and specifically the toxic benzene contained in it, made the air they inhaled impure, harmful, and dangerous, which resulted in their claimed physical injuries.

RaceTrac alleges, and the Court accepts as true, that discovery in the Underlying Lawsuits has revealed that the Underlying Plaintiffs actually allege that their injuries resulted from exposure to gasoline fumes, not to benzene fumes.[3] The parties also dispute whether the substance that allegedly caused the Underlying Plaintiffs' injuries is properly characterized as gasoline fumes or benzene. But the Underlying Lawsuits allege that medical tests revealed exposure to high levels of benzene. It is irrelevant whether the Underlying Plaintiffs were injured by benzene after exposure to fumes from pure or highly concentrated benzene fumes, or were exposed to benzene through gasoline fumes that contained

---

[3] What ultimately matters is the truth of the underlying claims, not the allegations in the complaint. See Anderson v. S. Guar. Ins. Co. of Ga., 508 S.E.2d 726, 730 (Ga. Ct. App. 1998). Anderson involved an insurance exclusion for intentional acts. The underlying plaintiffs in that case alleged an intentional injury in the complaint, but it later became clear that the injury resulted from negligence, so the exclusion did not apply. This concern is not relevant in this case because the only possible basis for RaceTrac's liability to the Underlying Plaintiffs would be due to an occurrence of toxic poisoning.

a typical concentration of benzene.  What matters is that, regardless of how they were exposed, the alleged injuries in the Underlying Lawsuits resulted from benzene poisoning, and benzene "has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous," (Original Policy, endorsement 9). See Reed, 667 S.E.2d at 92 (holding that carbon monoxide was a pollutant because "the very basis for [the plaintiff's] lawsuit is her claim that the release of carbon monoxide gas inside the rental house 'poisoned' her").

   c.   Whether The Injuries Alleged In The Underlying Lawsuits "Arose Out Of" Or Are "Related To" Pollution

RaceTrac also argues that Barrett "demands a finding that the injuries alleged in the [Underlying Lawsuits] did not 'arise out of' and are not 'related to' the alleged 'pollution.'"  (Pl.'s Br. Opp'n Mot. Dismiss at 16).  Besides finding the definition of "pollutant" ambiguous in that case, Barrett also held that the record did not show that "the mere presence of the natural gas, standing alone, caused the injury to Barrett."  696 S.E.2d at 331.  Barrett held that the phrase "arising out of" contained in insurance contract exclusions must be interpreted narrowly, "applying the 'but for' test traditionally used to determine cause-in-fact for tort claims."  Id. The record in that case indicated that one could work in the presence of natural gas without harm, and the complaint alleged that Barrett's injuries were not caused by natural gas, but by the other employees' failure to monitor oxygen levels in the

enclosed space where Barrett was working.  Id. at 332.  The Barrett court could not conclude, on those facts, that Barrett's injuries "arose out of" natural gas.  Id.

RaceTrac argues that similar reasoning applies in this case.  Like the natural gas in Barrett, RaceTrac alleges that one can work safely in the presence of gasoline fumes.  Similarly to Barrett, the Underlying Plaintiffs' injuries were not caused by gasoline fumes alone, but by the accumulation of fumes due to the negligent installation or failure to install a gasoline vapor recovery system.

The Court concludes that the reasoning of Barrett does not apply to this case and that the Underlying Plaintiffs' injuries unambiguously arose out of or are related to pollution.  Although RaceTrac alleges that this case is ambiguous because an additional act of negligence allegedly caused the Underlying Plaintiffs' injuries, Barrett cannot be read that broadly.  All injuries caused by exposure to pollution will in some sense be caused by an act that causes the release of pollution.  But Barrett did not purport to broadly repudiate the enforceability of pollution exclusions.

The distinction between Barrett and the present case is that the natural gas did not injure the underlying plaintiff in that case, the lack of oxygen did.  Barrett does not apply where the mere presence of the pollutant causes injury.  Id. at 332 (citing Reed, 667 S.E.at 92).  Whereas Barrett was not injured by the alleged

18

pollutant acting alone, but by oxygen-deprivation, the Underlying Plaintiffs in this case were allegedly injured directly by exposure to a toxic chemical that was present in the air.  It is immaterial that the reason they were exposed was an act of another person; what matters is that the Underlying Plaintiffs' injuries resulted from the harmful properties of the chemical to which they were exposed, not from the chemical acting indirectly to create the conditions under which the injuries arose.  See Reed, 667 S.E.2d at 91 (upholding application of pollution exclusion to tenant's carbon monoxide poisoning, even though injury was allegedly caused by landlord's failure to keep house in good repair, because carbon monoxide, standing alone, poisoned the tenant).

The injuries alleged in the Underlying Lawsuits unambiguously "arose out of" or are "related to" pollution.  The Pollution Exclusion is not ambiguous under the circumstances of this case, and any liability for the injuries alleged in the Underlying Lawsuits are subject to the exclusion.  The Policy will not, as a matter of law, provide coverage for liability arising out of the Underlying Lawsuits unless Georgia public policy prohibits the enforcement of the Pollution Exclusion under these circumstances.

C.    Georgia Public Policy And The Pollution Exclusion

The Court now considers whether, under the circumstances of this case, allowing the Pollution Exclusion to foreclose RaceTrac's coverage under the Policy for liabilities resulting from the Underlying Lawsuits would violate Georgia public policy.  "Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy." Reed, 667 S.E.2d at 91.  In particular, insurance companies are permitted "to insure against certain risks while declining to insure against others." Id. at 91-92.   Insurance policies are contracts, and contracts in Georgia must not be voided as against public policy unless the case is free from doubt and where an injury to the public interest clearly appears.  See Emory Univ. v. Porubiansky, 282 S.E.2d 903, 904-05 (Ga. 1981); Baldwin v. State Farm Fire & Cas. Co., 590 S.E.2d 206 (Ga. Ct. App. 1990).

The Georgia Supreme Court has declared that "Georgia public policy strongly supports the rule that an insurer may not obtain reimbursement unless and until its insured has been completely compensated for his losses." Davis v. Kaiser Found. Health Plan of Ga., 521 S.E.2d 815, 818 (Ga. 1999).  This rule does not apply here because no reimbursement provisions are at issue.  The rule in Davis, however, was recently cited by the Georgia Court of Appeals in Barrett in support

of a public policy in favor of enforcing insureds' reasonable expectations.  696

S.E.2d at 330-31.  RaceTrac's public policy argument relies exclusively on the rule

articulated by Barrett.

  Barrett announced the principle that "Georgia public policy disfavors

insurance provisions that 'permit the insurer, at the expense of the insured, to avoid

the risk for which the insurer has been paid' and for which the insured reasonably

expects it is covered."  Id. (quoting Davis, 521 S.E.2d at 818).[4]  The language "at

the expense of the insured" comes from Davis, and means that Georgia policy

disfavors any requirement that an insured reimburse an insurer at the insured's

expense if the result is that the insured is not fully compensated for the liability for

which the insured purchased insurance.  Davis, 521 S.E.2d at 817-818.  This

consideration clearly does not apply to Barrett or to this case, because neither case

involves an insured reimbursing an insurer.

  The clause "for which the insured reasonably expects it is covered" is not

found in Davis and appears to have been added by the Barrett court.  The Barrett

court cited several cases for the proposition that insurance contracts should be

construed based on what a reasonable person in the position of the insured would

---

[4] Barrett held specifically that it "would violate the public policy of Georgia to
allow [the insurer] to sell a liability policy to cover [the insured] whose main
product is natural gas, which policy contains an exclusion for damages resulting
from such natural gas."  Id. at 330.

understand them to mean.  Id. (citing Rentrite, Inc. v. Sentry Select Ins. Co., 667

S.E.2d 888 (Ga. Ct. App. 2008) & Ace American Ins. Co. v. Truitt Bros., 655

S.E.2d 683 (Ga. Ct. App. 2007)).  There is a slight difference, however, between

the "reasonable expectations of the insured" rule that Barrett relies on and the rule

in the cases that Barrett cites that insurance contracts are interpreted based on what

a reasonable person in the position of the insured would understand them to mean.

"[T]he essential difference is that the reasonable expectations rule calls for an

ascertainment of the insured's expectations, followed by a necessarily subjective

determination of whether that expectation is reasonable, while the reasonable

person rule looks directly at what an objectively reasonable person would have

expected, based on the language used."  2 Couch on Insurance § 22:11 (3d ed.

2010).

    The language of Barrett demonstrates that it is based upon a public policy in

favor of enforcing the reasonable expectations of insureds, at least with respect to

exclusions from coverage.  First, the decision says that public policy disfavors

insurance provisions that exclude coverage "for which the insured reasonably

expects it is covered."  696 S.E.2d at 330.  Second, Barrett relies on the insured's

"understanding (implicit or otherwise)" at the time the insured entered into the

contract.  Id. at 331.  Finally, Barrett had already declared that the policy was

ambiguous, <u>id.</u> at 330, which is typically a prerequisite for application of the

reasonable expectations rule.  <u>Couch on Insurance</u> § 22:11 ("the reasonable

expectation rule is usually predicated on an ambiguity in the policy").

 In Georgia, the reasonable expectations of the insured should only be

considered where the language of the contract is ambiguous.  Georgia courts

describe the rule as follows:

> When a provision of an insurance contract is ambiguous, "three well
> known rules" apply in the construction of the contract: "any
> ambiguities in the contract are strictly construed against the insurer as
> drafter of the document; any exclusion from coverage sought to be
> invoked by the insurer is likewise strictly construed; and the insurance
> contract is to be read in accordance with the reasonable expectations
> of the insured where possible."

<u>Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n</u>, 654 S.E.2d 207, 209-10

(Ga. Ct. App. 2007) (quoting <u>Richards v. Hanover Ins. Co.</u>, 299 S.E.2d 561 (Ga.

1983)); <u>see also</u> <u>Lambert v. Alfa Gen. Ins. Corp.</u>, 660 S.E.2d 889, 891 (Ga. Ct.

App. 2008) (if insurance terms are clear and unambiguous, look to contract alone

to ascertain parties intent, but if they are ambiguous, turn to the rules of contract

construction, including rule that insurance contracts are read in accordance with

insured's reasonable expectations); <u>ALEA London Ltd. v. Woodcock</u>, 649 S.E.2d

740, 745 (Ga. Ct. App. 2007) ("when the policy terms are clear and unambiguous,

we look to the contract alone to determine that intent").

Because the consideration of the insured's reasonable expectations in Barrett necessarily depended on the existence of ambiguity as to whether natural gas was a pollutant, the Court concludes that Barrett does not apply in this case.  The Court has already held that, unlike in Barrett, the Pollution Exclusion in this case is not ambiguous, and it is not ambiguous that benzene, the "toxic" chemical that allegedly poisoned the Underlying Plaintiffs, is within the Policy's definition of pollutant.  The Court is not permitted to turn to the "well known rules of contract construction," Lambert, 660 S.E.2d at 891, because the terms are already clear and unambiguous.  Where the contract terms are unambiguous, the only "reasonable" expectation that RaceTrac can have is what is reflected in the clear language of the Policy.  To the extent RaceTrac had expectations beyond the plain language of the Policy, those expectations were unreasonable as a matter of law.  Barrett's public policy in favor of enforcing an insured's *reasonable* expectations therefore cannot apply.

Even if Barrett could be read broadly to require the abrogation of *unambiguous* exclusions from coverage of liabilities arising out of an insured's "main product," the Court concludes that the Pollution Exclusion is not void as against public policy.  Gasoline is not RaceTrac's "main product," and the largest

portion of RaceTrac's potential liability would still be covered by the Policy even if the Pollution Exclusion is enforced in this case.

The allegations in RaceTrac's Complaint, taken as true, do not support a finding that gasoline or benzene is RaceTrac's "main product."  "Main product," in the context of <u>Barrett</u>, means that essentially all of the insured's activities involve that product.  For a company that only sells natural gas, for example, natural gas is its "main product."  RaceTrac, in contrast, operates or leases to others more than 500 "retail gasoline convenience stores."  (Compl. ¶ 1).  It follows from the Complaint that RaceTrac's business involves in significant part the operation of convenience stores and the many products and services that are naturally a part of that type of operation.  Unlike in <u>Barrett</u>, which involved companies that had only one "main" product, RaceTrac has numerous products and services that are important to its business and that create the risk of liability.

Regardless of whether gasoline or benzene is RaceTrac's "main product," <u>Barrett</u> does not apply for the further reason that enforcement of the Pollution Exclusion in this case would not imply that a significant portion of the coverage under the Policy is subject to the exclusion.  In <u>Barrett</u>, the underlying plaintiff's injury was not caused directly by exposure to natural gas, but because the presence of natural gas led to the creation of an oxygen-deprived atmosphere that caused the

underlying plaintiff to suffer brain damage.  Id. at 330.  If the policy in Barrett did not cover injuries indirectly caused by the presence of natural gas, then the policy in that case would have been largely illusory because the insured dealt exclusively with natural gas, and consequently all the risks it faced were indirectly related to natural gas.  Cf. Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co., 207 P.3d 839 (Colo. App. 2008) ("Exclusions impermissibly render coverage illusory when they in effect allow the insurer to receive premiums when realistically it is not incurring any risk of liability." (internal quotation marks omitted)).

In this case the liability that is subject to the Pollution Exclusion is for injuries that are alleged to have been caused directly by exposure to a toxic chemical that was present in the air.  The Policy still covers the risk associated with operating convenience stores.  The Court also does not believe that the language of the Pollution Exclusion would support its application to indirect injuries related to gasoline, such as if a customer "slipped and fell on spilled motor oil or gasoline."  (Pl.'s Br. Opp'n Mot. Dismiss at 21-22).[5]  Since, as RaceTrac

---

[5] In particular, the plain meaning of the Pollution Exclusion suggests that a small pool of spilled motor oil inside a convenience store would not make any "air, land, structure or the air therein" "impure, harmful, or dangerous."  (Original Policy, endorsement 9).  While the language is straightforward, at worst the application of the exclusion to a "slip and fall" would be ambiguous.  See Kerr-McGee Corp. v.

notes, "gasoline fumes are not generally considered dangerous," (Br. Opp'n Mot. to Dismiss at 14), the actual risk of liability-creating incidents faced by RaceTrac that are excluded by the Pollution Exclusion appears quite small.[6]

The language of the Pollution Exclusion also demonstrates that it is tailored "to insure against certain risks while declining to insure against others." Reed, 667 S.E.2d at 91-92. Although the introduction of chemicals from gasoline into the air inside a structure falls within the Pollution Exclusion, there is an exception to the exclusion for injuries or damages that arise from the "heat, smoke or fumes from a hostile fire." (Original Policy, endorsement 9). Given the obvious danger of fire that is present when working with gasoline, it is clear that despite the Pollution Exclusion the Policy still covers many significant risks associated with operating retail gasoline convenience stores. The Court finds this exception to the exclusion supports that the Policy covers fumes from fires but does not cover pollution in the form of fumes that are not caused by a fire. This distinguishing between what

_____

Ga. Cas. & Sur. Co., 568 S.E.2d 484, 488 (Ga. Ct. App. 2002) ("The exclusion clause of an insurance contract may be ambiguous in one coverage context and not in another.").

[6] The natural gas at issue in Barrett was also described as generally safe. Since the insurer there sought to exclude coverage for injuries that were indirectly related to natural gas, however, the reach of that exclusion was incredibly broad. Ace does not seek to apply the Pollution Exclusion to injuries that are indirectly related to gasoline, only injuries directly resulting from exposure to benzene in the air. Since by RaceTrac's own admission those fumes are generally safe, the enforcement of the exclusion here only excludes coverage for an extremely narrow class of risk.

fumes are or are not covered supports that the parties intended pollutant fumes to be excluded.

The Court concludes that enforcement of the Pollution Exclusion would not violate Georgia public policy.  Pursuant to the unambiguous language of the Policy, the Pollution Exclusion excludes coverage for liability arising from the Underlying Lawsuits.  RaceTrac has not stated a claim for declaratory relief upon which relief may be granted, and its Complaint must be dismissed.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant ACE American Insurance Company's Motion to Dismiss [11] is **GRANTED**.


**SO ORDERED** this 4th day of April, 2011.



_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE